Ex parte JACK RAY.

No. A-11096.   Oct. 20, 1948.
(198 P. 2d 756.)

438

Lee Williams, of Oklahoma City, for petitioner.

Mac Q. Williamson, Atty. Gen., and Lewis A. Wallace, Asst. Atty. Gen., for respondent.

JONES, J. This is an original action commenced by the petitioner, Jack Ray, to secure his release from confinement in the State Penitentiary.

The verified petition alleges that the petitioner entered a plea of guilty in the district court of Washita county on October 4, 1940, to a charge of murder, and was sentenced to serve a term of life imprisonment in the State Penitentiary; that pursuant to such judgment and sentence, the petitioner was incarcerated in the State Penitentiary, and is now incarcerated in the penitentiary serving said sentence; that at the time of the arraignment and plea of guilty of the accused, he was a minor 17 years of age; that he was inexperienced in court proceedings and only had a third grade education; that no

legal counsel was provided for the accused at the time of his arraignment and plea, and accused was not fully advised of the rights accorded him by the statutes and Constitution of the State of Oklahoma, and for that reason his confinement is without due process of law, and he is entitled to his discharge from imprisonment.

At the hearing before this court, the facts disclosed that the petitioner was born August 16, 1923, at Valley View, Tex., and received only a third grade education; that throughout the early boyhood of petitioner, he was in constant association with narcotic peddlers, thieves, and murderers; that in addition to the murder of George Goodwin on August 6, 1939, at Cordell, Okla., for which crime he was imprisoned to serve a life term in the penitentiary, and which sentence is the subject of this habeas corpus proceeding, the petitioner had participated in two other murders in addition to other lesser crimes. At the time the defendant was arrested for the commission of the murder of George Goodwin, he was serving a sentence in the State Reformatory at Granite, Okla., for the commission of another crime; that while in the reformatory he confessed to having shot the said George Goodwin, deceased, with a 45 calibre automatic pistol, and was accordingly returned to Washita county for arraignment and trial on a charge of murder. The accused was arraigned before the magistrate on the 30th day of September, 1940, at which time he waived his right to a preliminary hearing and was ordered held to await trial in the district court of Washita county. On the same day, an information was filed in the district court of Washita county, charging the petitioner, Jack Ray, with having committed the crime of murder. Four days later on October 4, 1940, the defendant was arraigned in the district court of Washita county. Both of his par-

ents were present at the arraignment. The information was read at length by the county attorney. The district judge then inquired as to whether the accused had counsel, to which the accused replied that he had none and did not desire counsel as he was guilty and knew what plea he wanted to make. The court then inquired as to the age of the petitioner and upon being informed of his age, inquired as to whether his parents were present. The parents being present in the courtroom, the trial judge discussed the matter of counsel to represent the accused with the parents, and they informed the court that they had thoroughly discussed the case with the defendant and had also consulted an attorney concerning the charge against the accused, and that since the defendant was guilty of the commission of the crime that he did not want an attorney, and that they did not feel that an attorney was necessary. The trial court then informed the accused and his parents that upon a plea of guilty or conviction by a jury of the crime of murder, the punishment fixed by law was either life imprisonment in the State Penitentiary, or death in the electric chair, and that if the accused entered a plea of guilty, it was mandatory on the court to sentence him to either imprisonment in the State Penitentiary for life or assess his punishment at death in the electric chair. The court then advised the defendant that he had a right to trial by jury and that it was not necessary for him to enter his plea of either guilty or not guilty, but that the trial court would postpone further arraignment for such reasonable time as would give him time to consult with an attorney and determine just what plea he wished to make to the charge set forth in the information. The defendant then stated that he understood the nature of the charge against him and knew what plea he wanted to enter and did not desire any additional delay in the pro-

ceedings for the purpose of entering his plea. The defendant then entered his plea of guilty and asked that sentence be pronounced at once. The trial court thereupon sentenced him to serve a term of life imprisonment in the State Penitentiary, and he was committed to that institution. The term of imprisonment, which the petitioner was serving in the State Reformatory at Granite at the time he was apprehended on the murder charge, did not expire until January 6, 1942. At the expiration of that term and on that date, he commenced the serving of this sentence of life imprisonment.

This proceeding then resolves itself into the one question. Did the district court of Washita county lose jurisdiction to pronounce sentence against the accused upon his plea of guilty by reason of the failure of the court to appoint counsel for the accused? Petitioner cites and relies as his authority the cases of Ex parte Cook, 84 Okla. Cr. 404, 183 P. 2d 595; Ex parte Cornell, 87 Okla. Cr. 2, 193 P. 2d 904, 906.

In Ex parte Cornell, this court held:

"In a capital case, the trial court should assign counsel to represent youth seventeen years of age, upon his arraignment before receiving his plea, as a necessary requisite of due process of law, even though said youth states to the court that he waived his right to counsel."

If we were considering just the naked rule of law stated in the above quotation, it is apparent that the sentence against the accused would have to be vacated. However, in the same opinion in which the above statement appears this court stated:

"Whether one accused of crime has waived his right to the assistance of counsel for his defense must depend in each case upon the particular facts and circumstances

442

surrounding that case, including the background, experience, and conduct of the accused."

Each case must be determined after a hearing and an investigation of all the facts and circumstances surrounding that particular case, and the writ of habeas corpus should not be used by a court to release one from the consequences of a sentence to imprisonment in the State Penitentiary, where the facts show that the accused thoroughly understood the nature and consequences of his plea and effectively waived his constitutional right to the assistance of counsel.

In Ex parte Cook, supra, and Ex parte Cornell, supra, neither of the parents of those defendants were present in court at the time they received their sentences which were pronounced upon the date the information was filed against them. In the instant case, the parents of the petitioner were present and advised the court that they had consulted with an attorney concerning the charge against their son, and that in discussing the matter with their son and with the attorney, it was evident that the best that the accused could hope for, under the record, was a term of life imprisonment in the State Penitentiary. There has been no question raised as to the guilt of the accused. In fact, in his verified petition filed herein, he states that he shot and killed George Goodwin with a 45 calibre automatic pistol. At the hearing before our court, it was disclosed that he shot and killed the deceased, who was a truck driver, in an attempt to rob him. It having been shown by the evidence that counsel had been consulted by accused and his parents, prior to the time of the arraignment of the accused in the district court, it cannot be said that he was denied the assistance of counsel.

Another thing distinguishes the record in the instant case from the facts in Ex parte Cook, supra, and Ex parte Cornell, supra. In the instant case, over eight years have elapsed since the defendant was sentenced and over nine years have elapsed since the crime was committed. In the Cook and Cornell cases, shortly after the commitment of those two defendants to the penitentiary and after their parents had learned of their plight, action to secure their release by habeas corpus was instituted. Here the accused, who is now 25 years of age, and his parents have acquiesced in the sentence pronounced against the accused, and by their conduct have remained silent for these eight years without making any effort to set aside the sentence of the accused. It is apparent from a reading of the petition that the petitioner is basing his hope for a vacation of the judgment solely upon the rule of law hereinabove first quoted from Ex parte Cornell, supra, During all the period of time from October 4, 1940, which was the date the sentence was pronounced against the accused, up to the time of the filing of his verified petition herein, the state was bound by the action taken in sentencing the accused to prison. The only person who could complain as to an alleged deprivation of his constitutional rights was the defendant. He was the only one who could demand a new trial or ask that the judgment be vacated. Ex parte Meadows, 71 Okla. Cr. 353, 112 P. 2d 419. It would be a profound weakness in the administration of justice, indeed, if a court would allow one accused of crime to enter a plea of guilty and then, after waiting for years until the state's witnesses are scattered or dead, or their memory about the events connected with the crime had become dimmed by the years to where the state could not effectively present the facts in connection with the

commission of the crime, claim that he would be entitled to his discharge because in the first instance he was allegedly deprived of some of his rights. Under such circumstances, this court has adopted the rule that the right to relief by habeas corpus has been lost by laches where the petition for habeas corpus is delayed for a long period of time. Ex parte Matthews, 85 Okla. Cr. 173, 186 P. 2d 840; Ex parte Motley, 86 Okla. Cr. 401, 193 P. 2d 613; Ex parte Snow, 84 Okla. Cr. 423, 183 P. 2d 588.

It should be emphasized that in denying the writ of habeas corpus in the instant case, we are not deviating from the rule announced in Ex parte Cornell, supra, that it is the duty of the trial court, upon arraignment of a minor defendant upon a capital case, to assign counsel to represent him before receiving his plea, whether the same is requested or not. In the instant case, the facts disclose that the defendant had the benefit of the assistance of counsel, that he also made an intelligent waiver of his right to counsel at time of arraignment, and that his application is further barred by laches on his part in bringing the action.

The writ of habeas corpus is therefore denied.

BAREFOOT, P. J., and BRETT, J., concur.